AO 106 (Rev. 01/09) Application for a Search Warrant

CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED
4/28/2020
JULIA C. DUDLEY, CLERK
BY: s/ ELLA SURBER
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 1:20MJ68
737 Norfolk Avenue )
Bristol, VA )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ____Western____ District of ____Virginia____ *(identify the person or describe property to be searched and give its location):* 737 Norfolk Avenue, Bristol, VA - to include the residence, curtilage, garages, outbuildings, campers, persons and vehicles present, and vehicles in the immediate vicinity of the residence provided the keys to or operators of said vehicles are found on the premises. Attachment A consists of a photograph of the residence.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___21___ U.S.C. § __846/841(a)(1)__ , and the application is based on these facts: See Attachment C         and/or   841(a)(1)

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian Snedeker, Special Agent
*Printed name and title*

telephonically.
Sworn to before me ~~and signed in my presence~~.

Date: 4/28/20

City and state: ~~Abingdon~~ Lebanon, Virginia

_____
*Judge's signature*

Pamela Meade Sargent, USMJ
*Printed name and title*

# ATTACHMENT A



737 Norfolk Avenue, Bristol, VA

ATTACHMENT B

1. Methamphetamine distribution paraphernalia including (but not limited to) scales, cutting material, plastic baggies, wrapping material; devices used to communicate with other drug traffickers/co-conspirators including cellular telephones; electronic equipment used for counter-surveillance to include video surveillance systems and related DVRs (digital video recorders), scanners, and anti-bugging devices.

2. Books, records, ledgers, notes, and videos pertaining to the illicit distribution, purchasing, and transporting of methamphetamine.

3. Messages, letters, telephone numbers, and addresses relating to customers, suppliers, and other co-conspirators involved with the illicit distribution, purchasing, and transporting of methamphetamine. These messages, letters, telephone numbers, and addresses may be written on personal calendars, personal address and /or telephone books, Rolodex type indices, notebooks, loose pieces of paper, and found in mail.

4. Photographs and videos depicting methamphetamine, drug distribution paraphernalia, substantial assets, co-conspirators, and persons with methamphetamine,

5. Books, ledgers, receipts, bank statements, cashier's checks, and other items evidencing the acquisition, secreting, transferring and/or concealment of assets or the expenditure of narcotics proceeds.

6. Items or articles of personal property tending to show ownership, dominion, or control of the premises/property/vehicles. Such items or articles include (but are not limited to) personal identification, personal correspondence, diaries, checkbooks, notes, photographs, keys, receipts, mail, personal telephone and address books, videos, and motor vehicle related documents (titles/registrations).

7. Large amounts of currency (exceeding $1000.00) or readily transported assets which are used as cash equivalents (cashier's checks, prepaid money/credit cards, money orders, etc.)

8. Items listed in Paragraphs 2 through 6 may be stored in digital media. Therefore, digital media (including but not limited to computers/computer hard drives, digital video recorders (DVRs), floppy disks, CD's, flash/jump drives, personal digital assistants (PDA's), cellular telephones/smartphones, digital cameras, iPODs, iPADs, etc.) are to be seized and examined for the items listed in Paragraphs 2 through 6.

ATTACHMENT C

AFFIDAVIT of
Special Agent Brian Snedeker
Drug Enforcement Administration
Bristol, Virginia

1. I, Special Agent Brian Snedeker, being duly sworn hereby depose and say:

2. The purpose of this application and affidavit is to secure a search warrant for methamphetamine distribution/conspiracy related documentary evidence and equipment/supplies on the premises known as 737 Norfolk Avenue, Bristol, VA. This affiant, after obtaining and reviewing information, believes there is evidence of distribution of methamphetamine and/or conspiracy to distribute methamphetamine at 737 Norfolk Avenue, Bristol, VA in violation of 21USC 841(a)(1) and 846/841(a)(1).

3. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed for approximately (29) years. During my employment I have received comprehensive classroom training from the Drug Enforcement Administration in specialized narcotic investigative matters including but not limited to drug interdiction, drug detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and organizations involving the smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances and controlled substance precursors. I have participated in the investigations and subsequent arrests of hundreds of individuals involved with the trafficking of methamphetamine (a Schedule II Controlled Substance). I have also executed hundreds of search warrants related to the trafficking and manufacturing of methamphetamine.

4. The facts set forth in this affidavit are known to me as a result of my investigation into MARY ELIZABETH SAMPSON and MORGAN PAIGE PERRY and information provided to me by other law enforcement officers from multiple jurisdictions and an official with a local governmental agency. Any reference to the gender of any unnamed person within this affidavit does not necessarily reflect the true gender of said person.

5. During late 2019, law enforcement became aware of MORGAN PAIGE PERRY's involvement with methamphetamine trafficking by reviewing lawfully obtained text messages and/or audio recordings.

6. During the course of a motor vehicle stop within the Western District of Virginia on January 15, 2020, law enforcement arrested MORGAN PAIGE PERRY for possession with intent to distribute methamphetamine and other offenses after she was found to be in possession of a multi-gram quantity of methamphetamine that was pre-packaged in multiple baggies. PERRY was subsequently released on bond.

7. During February 2020, law enforcement utilized a confidential source or sources to perform multiple multi-gram methamphetamine controlled purchases (surveilled,

recorded, and monitored by law enforcement) from MORGAN PAIGE PERRY. The last such controlled purchase occurred during mid-February 2020.

8. During February 2020, law enforcement interviewed an individual (hereafter referred to as "Trafficker A") within the Western District of Virginia. Trafficker A advised law enforcement that he had been obtaining ounce to multi-ounce quantities of methamphetamine each week for several months from "Marybeth" SAMPSON (MARY ELIZABETH SAMPSON) and MORGAN PERRY. Trafficker A gave permission to law enforcement to examine his cellular telephone. A subsequent examination of Trafficker A's cellular telephone revealed Facebook "chats" between Trafficker A and "Morgan Paige" (believed by this affiant to be MORGAN PAIGE PERRY) and Trafficker A and "Marybeth Sampson" (believed by this affiant to be MARY ELIZABETH SAMPSON).

9. During the night of 02-12-2020, law enforcement in Bristol, VA performed a motor vehicle stop on a black Cadillac Escalade after it departed the Rodeway Inn in Bristol, VA and was observed speeding and having faulty equipment. A (100) gram scale calibration weight, digital scales, multiple new/unused Ziploc-type bags, and approximately (4) ounces of methamphetamine were subsequently seized from MARY ELIZABETH SAMPSON, the driver of the vehicle. MORGAN PAIGE PERRY was a passenger in the vehicle at the time of the stop. SAMPSON was charged with possession with intent to distribute methamphetamine and subsequently released on bond. SAMPSON claimed that her residence was 737 Norfolk Avenue, Bristol, VA. PERRY was not thoroughly searched at the time due to a lack of legal justification to do so and she was permitted to leave the scene.

10. During mid-March 2020, a reliable confidential source (hereafter referred to as "CS") advised law enforcement that MARY ELIZBETH SAMPSON (known to the CS as "Marybeth SAMPSON") is delivering ounce to multi-ounce quantities of methamphetamine to a particular address located within the Western District of Virginia. The CS claimed that MARY ELIZABETH SAMPSON travels with a woman named "Morgan" (believed by this affiant to be MORGAN PAIGE PERRY).

    The confidential source has provided information/assistance to law enforcement during the last (6) months that led to multiple arrests and seizures of methamphetamine. The CS has admitted to law enforcement, against his own penal interest, his involvement in a conspiracy to distribute methamphetamine.

11. During the late morning of March 18, 2020, MARY ELIZABETH SAMPSON was released on bond from the Sullivan County (Tennessee) Jail. SAMPSON had been incarcerated for a few days pursuant to her arrest for failing to appear in Bristol, VA General District Court for her arraignment in relation to her February 12, 2020 arrest (reference ¶9 above).

12. Law enforcement reviewed a recorded jail telephone call between an inmate and MORGAN PAIGE PERRY and MARY ELIZABETH SAMPSON that occurred at approximately 12:24pm on March 18, 2020. The call was made to MORGAN PAIGE PERRY's known cellular telephone number. During the call, it appeared that PERRY and SAMPSON were both inside a motor

vehicle. Both PERRY and SAMPSON spoke with the calling inmate. During the call, PERRY advised the inmate that PERRY and another person or persons just got SAMPSON out of jail (posted bond).

13. During the late afternoon of March 18, 2020, the CS contacted law enforcement and advised that MARY ELIZABETH SAMPSON (who the CS knows as "Marybeth SAMPSON") was either within the Western District of Virginia or on her way (from Tennessee) to the Western District of Virginia to make a methamphetamine delivery. The CS advised that SAMPSON was traveling inside a vehicle with multiple individuals.

14. Law enforcement reviewed a recorded jail telephone call between an inmate and MORGAN PAIGE PERRY that occurred on March 20, 2020. The call was made to MORGAN PAIGE PERRY's known cellular telephone number. During the call, PERRY made it clear to the caller that MARY ELIZABETH SAMPSON was in the presence of PERRY and that they had been out earning money and they planned to spend the money by going shopping.

15. On March 23 2020, the CS advised law enforcement that MARY ELIZABETH SAMPSON was traveling with a female subject and a black male subject. The CS further advised that he saw SAMPSON with her associates within the Western District of Virginia on this date and noted that their intent was to go to Tennessee to obtain a multi-ounce quantity of methamphetamine and bring it back to the Western District of Virginia in order to sell the methamphetamine. Shortly after receiving this information from the CS, law enforcement in Bristol, VA observed SAMPSON driving a car with MORGAN PAIGE PERRY as a rear seat passenger and a black male subject (positively identified/recognized by law enforcement and known to have multiple felony convictions for distribution of cocaine) as a front seat passenger. The vehicle was traveling in the direction of Tennessee while on a major thoroughfare within Bristol, VA.

16. During March 2020, a co-habitant of 737 Norfolk Avenue, Bristol, VA told a law enforcement officer and a member of another governmental agency that he used methamphetamine inside the residence.

17. On April 1, 2020, a federal search warrant was executed upon the person of MORGAN PAIGE PERRY during the course of a motor vehicle stop in Bristol, Virginia. Approximately (½) ounce of methamphetamine was seized from the ceiling mounted sunglasses holder located between the driver of the vehicle and MORGAN PAIGE PERRY (front passenger) and located within arm's reach of PERRY. After having been advised of her rights, PERRY claimed that she knew the methamphetamine was present in the vehicle but claimed it belonged to MARY ELIZABETH SAMPSON. PERRY stated that she recently picked up SAMPSON in the Kingsport, TN area and had just dropped her off at a Norfolk Avenue, Bristol, VA house (identified by law enforcement as 737 Norfolk Avenue, Bristol, VA by way of PERRY's description of the residence) shortly before the motor vehicle stop. This affiant observed mail on the vehicle floorboard of where PERRY had been seated during the car stop and noted that the mail was addressed to MARY ELIZABETH SAMPSON at 737 Norfolk Ave, Bristol, VA 24201-4652.

18. Law enforcement recently reviewed a recorded telephone conversation that occurred on April 22, 2020 between MARY ELIZABETH SAMPSON and an individual (hereafter referred to as "Trafficker B") incarcerated in the Sullivan County Jail (Tennessee) who called SAMPSON at one of SAMPSON's known cellular telephone numbers (a number listed to "Mary Sampson" within the Sullivan County Jail inmate telephone system). An experienced narcotics investigator involved with the investigation of MARY ELIZABETH SAMPSON and MORGAN PERRY reviewed the conversation between SAMPSON and Trafficker B. During the conversation, SAMPSON advised Trafficker B that she obtained "four" from Trafficker B's relative (hereafter referred to as "Trafficker C"), paying for "two" and owing "eight" for "two". SAMPSON advised Trafficker B that Trafficker C claimed "the guy" will be back in town Friday (04-24-2020) and Trafficker C needs the money by then. SAMPSON also told Trafficker B that she is going to try and get (4) again. Based upon the above semi-coded conversation between SAMPSON and Trafficker B, law enforcement believes SAMPSON was letting Trafficker B know that she had obtained (4) ounces of methamphetamine from Trafficker C and that SAMPSON had paid for (2) of the ounces and was fronted (2) ounces for which SAMPSON owes $800 [$400 per ounce of methamphetamine is consistent with current methamphetamine pricing within this region]. It is also believed that SAMPSON was letting Trafficker B know that Trafficker C wanted the $800 he is owed by Friday (04-24-2020) when Trafficker C's source of supply ("the guy") will be coming to town. It is also believed that SAMPSON was advising Trafficker B that she is going to try and obtain (4) ounces of methamphetamine again.

19. This affiant is aware based on his training, experience, and conversations with other law enforcement officers that individuals who distribute and/or conspire to distribute methamphetamine typically maintain methamphetamine, methamphetamine distribution paraphernalia (small, plastic, Ziploc-type baggies, digital scales, etc.), notes, records, messages, and telephone numbers (pertaining to methamphetamine trafficking related contacts/co-conspirators/customers), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) on their persons, inside their residences (and the residences/distribution locations they utilize for narcotics trafficking purposes) and related garages, outbuildings/barns, campers, vehicles (or the vehicles they operate), and inside of vehicles registered to other persons when those vehicles are parked at or in the immediate vicinity of the trafficker's/conspirator's residence/property/distribution location.

20. This affiant is aware based on his training, experience, and conversations with other law enforcement officers that persons who distribute and/or conspire to distribute methamphetamine routinely have individuals who are customers and/or co-conspirators present at their residences (and the residences/distribution locations they utilize for narcotics trafficking purposes) and related, garages, outbuildings/barns, and campers. These customers/co-conspirators are typically drug users and drug traffickers themselves as they generally sell some (if not all) of the methamphetamine they purchase in order to make a profit, pay for their own drug habits, or both. These customers/co-conspirators often illegally possess methamphetamine and drug use paraphernalia along with notes, records, messages, and telephone numbers (pertaining to the acquisition/distribution of methamphetamine), and other items as listed and explained on Attachment B (of the Application and Affidavit for Search Warrant to which this affidavit is attached) on

their persons and in their vehicles (or the vehicles they operate) which are oftentimes parked at or in the immediate vicinity of their sources'/co-conspirators' residences/properties/distribution locations.

21. MARY ELIZABETH SAMPSON resides in hotels in Bristol, VA and northeast Tennessee and usually changes hotel locations on a frequent basis. SAMPSON also has/utilizes a known residence at 737 Norfolk Avenue, Bristol, VA (located within the Western District of Virginia; SAMPSON's Virginia driver's license was updated during 2020 to reflect 737 Norfolk Ave, Bristol, VA as SAMPSON's address; also reference ¶9 and ¶17 above).

22. Based upon the facts set forth above, I believe there is probable cause for the issuance of a search warrant for the premises known as 737 Norfolk Avenue, Bristol, VA (located within the Western District of Virginia) as there is probable cause to believe that there is evidence of a violation of 21 USC 841(a)(1) and 846/841(a)(1) at said premises.

_____  4-28-2020
Brian Snedeker, Special Agent (DEA)  Date

Subscribed and sworn to before me telephonically this the 28th day of April 2020
in Abingdon, Virginia.
Lebanon

_____
Pamela Meade Sargent
United States Magistrate Judge
Western District of Virginia

Seen by:

_____s/Roy F. Evans_____  04-28-2020
Special Assistant United States Attorney  Date